(156 App. Div. 663.)

### In re BAYLES.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

ATTORNEY AND CLIENT (§ 38*)—MISCONDUCT—DISBARMENT.

An attorney, employed to procure a divorce for a client, who deliberately attempted, by hired agents, to induce the wife of the client to commit adultery, or to place her in such a situation that adultery would be presumed, to establish a case, is guilty of gross unprofessional misconduct, justifying disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. § 38.*]

Proceedings by the Association of the Bar of the City of New York for the disbarment of Chester A. Bayles, an attorney, for professional misconduct. Judgment of disbarment ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Carroll G. Walter, of New York City, for petitioner.

Chester A. Bayles, of New York City, pro se.

INGRAHAM, P. J. The respondent was charged with professional misconduct in relation to obtaining evidence to secure a divorce by one Dr. Zimmerman from his wife. The matter was referred to the official referee, who has filed a report finding the respondent guilty of the offenses charged and this is an application upon that report.

The referee reports that respondent was retained and paid by Dr. Zimmerman to obtain a divorce from his wife, who then lived apart from her husband. To procure evidence for this purpose, the respondent employed a woman who was called Durnell, and a man named Vassar, to assist him. Mrs. Durnell became acquainted with Mrs. Zimmerman, and arranged with her to go to a restaurant or café at the corner of Lenox avenue and 116th street, where they were met by respondent and Vassar, and seem to have had several drinks together. The four then repaired to a restaurant on West Eighty-Fourth street, where they had dinner and more drinks. They then repaired to Koster & Bial's on Sixth avenue, where they had more drinks. They then went to a hotel, known as the Knickerbocker Hotel. Vassar registered as man and wife, and a room was assigned to him, to which he took Zimmerman's wife, and the respondent registered as man and wife under the name of John J. Williams and wife, and was assigned to an adjoining room, to which he took the Durnell woman. The respondent had communicated with the husband Zimmerman by telephone, who appeared at the hotel and with the respondent entered the room occupied by Vassar and Mrs. Zimmerman, and found Mrs. Zimmerman partially undressed in the room with Vassar. The next day the respondent commenced an action on behalf of Zimmerman for a divorce, which was defended by the wife and resulted in a judgment in favor of the wife; the court finding that no adultery had been committed. Upon the proceedings before the referee Mrs. Zimmerman testified that prior to going to this hotel she was furnished liquor by the Durnell woman, which she believed was drugged, and the referee states that its effect on her was such as to lend color to that theory; but whether she was drugged or not, the amount of liquor with which she was furnished was sufficient to render her irresponsible to some extent. Neither Vassar nor Mrs. Durnell, the respondent's agents, was called as a witness; but the referee treats the condition of Mrs. Zimmerman as unimportant, and with that conclusion we agree.

It appears from the whole testimony—and the referee has so reported—that the respondent deliberately plotted the creation of circumstances from which a legal inference of adultery could be drawn. The respondent himself admits the employment of Vassar and the Durnell woman for the purpose of getting evidence against Mrs. Zimmerman to enable him to procure for his client, Zimmerman, a divorce, and to accomplish that purpose he and his employés induced Mrs.

Zimmerman to accompany him to these various drinking places, took her to a hotel, and put her in a room with one of his agents, and then telephoned his client to come to the hotel, so that she would be caught in such a situation as would justify an inference that adultery had been committed. The respondent, therefore, procured the wife to commit the offense, if such an offense was committed, which would justify a judgment of divorce. Here was a trap deliberately set by the respondent; the object being to entrap Mrs. Zimmerman into such a situation that she could be convicted of adultery. Whether Mrs. Zimmerman went to the hotel voluntarily or not, whether she committed adultery with the respondent's agent or not, is entirely immaterial. The professional misconduct consists in the respondent, a lawyer employed to procure a divorce, deliberately attempting by his hired agents to induce the wife of his client to commit adultery, or to place her in such a situation that adultery would be presumed. That such conduct is absolutely inconsistent with the membership of the profession that the respondent has disgraced is apparent, and for this reason the referee was correct in refusing to reopen the case, after the respondent had testified and the case was closed, to allow the respondent to produce the testimony of these other witnesses, and justifying this court refusing to send the case back to the referee.

Upon his own testimony the respondent is convicted of gross professional misconduct, which can only result in his disbarment; and it is so ordered. All concur.